

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

ENTERED
02/24/2016

```
                              )
IN RE                         )
                              )
NOAH E. ESTRADA,              )   CASE NO. 16-80003-G3-11
                              )
          Debtor,             )
                              )
```

<u>MEMORANDUM OPINION</u>

The court has held an evidentiary hearing on the "Debtor's Emergency Motion for Authority to Obtain Secured Credit Pursuant to the Provisions of 11 U.S.C. § 364(c)(2)" (Docket No. 42). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Noah E. Estrada filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 4, 2016.

Debtor's schedules reflect that he owns a large farm (on two adjacent tracts of approximately 1,223 acres and 1,267 acres) in Brazoria County, Texas, and a large farm (approximately 960 acres) in Quay County, New Mexico. (Docket No. 12). Debtor testified that he purchased the farms with the proceeds of sale

of a farm in the Texas Pandhandle, and with financing provided by the sellers of those farms, including Max Wollam And Sons ("Wollam").  Debtor testified that he leases farms, totaling an additional 1,300 acres, in Castro and Lamb counties in the Texas Panhandle.

Debtor testified that, during 2015, he planted approximately 1,100 acres of corn and 1,100 acres of milo sorghum in the Brazoria County farm, 400 acres of corn in the Texas Panhandle.  He testified that he leases the New Mexico farm to his son, and receives rent from his son on that property.

Debtor testified that, in 2015, he experienced extremely low yields in his Brazoria County crops due to flooding at the time of planting.  He testified that he experienced extremely low yields in his north Texas crops due to flooding at the time of harvest.

Debtor testified that, during 2014, he purchased seed and other crop inputs from a company called Helena, using in-house unsecured financing provided by Helena.  He purchased approximately $350,000 in products from Helena.  He testified he was unable to repay the loans, and thus was unable to purchase additional inputs from Helena on unsecured trade credit for the 2015 growing season.  He testified that he obtained trade credit from Pioneer, in the approximate amount of $118,000, for the purchase of seed and other inputs for the 2015 growing season.

2

Debtor testified that he borrowed additional funds during 2015 from an entity named Pinnacle, in order to purchase inputs from Sanders Corporation.  He testified repaid the Pinnacle loan from the proceeds of crop sales and crop insurance during 2015.  He testified that, despite the fact that he repaid the Pinnacle loan, Pinnacle is presently unwilling to extend him unsecured credit for inputs for the 2016 growing season.

Debtor testified that he has prepared a crop plan for the 2016 growing season, in consultation with Brady Whitley, a crop consultant with Sanders.  He then used the input budgets to determine the most profitable course of action.  Debtor proposes to grow 1,570 acres of milo sorghum, and 645 acres of cotton, in Brazoria County.  He projects revenue of $723,456 from milo sorghum in Brazoria County, based on a yield of 6,000 pounds per acre, and a price of $7.68 per hundred pounds.  He projects revenue of $359,910, based on a yield of 900 pounds per acre, and a price of $62.00 cents per hundred pounds.  Debtor proposes to grow 660 acres of irrigated corn and 272 acres of irrigated wheat in the Texas Panhandle.  He projects revenue of $534,600, based on a yield of 240 bushels per acre, a 25 percent payment to the lessors of the land, and a price of $4.50 per bushel.  He projects revenue of $51,408, based on a yield of 60 bushels per acre, a 25 percent payment to the lessors of the land, and a price of $4.20 per bushel.

3

Debtor testified that he also receives $125,000 annual revenue based on a farm subsidy triggered when rice prices are below a certain point. He anticipates receiving the subsidy again in 2016.

Debtor anticipates receiving $75,000 in revenue from the rental of the New Mexico property to his son.

Debtor testified that his estimates were largely based on his historical crop yields, and the actual production history ("APH"), a long-term average monitored by the United States Department of Agriculture's Farm Service Agency ("FSA") for each county and crop insurance providers. He testified that the APH is kept for each farmer, each farm, and each crop.

Debtor testified that he has obtained operating loans in the past. He testified that banks provide input financing for purchasing inputs such as fertilizer, seed, chemicals, and fuel. He testified that financing is arranged before planting, and the loans are repaid from the crop proceeds, crop insurance, or government payments, when the crop is harvested.

In the instant motion, Debtor seeks to borrow $1,095,196, secured by a lien on his 2016 crops, crop insurance, and government payments. The budget attached to the instant motion reflects amounts for fertilizer, seed, fungicide, herbicide, insecticide, labor, repairs, harvesting, and miscellaneous expenses. (Docket No. 42).

4

Debtor testified that he set forth the expenses in his budget based on numbers supplied by Whitley, the representative of Sanders, his supplier.  He testified that Sanders is one of the higher-cost suppliers.  He testified that he anticipates trying to obtain some of the inputs at lower cost.  The court finds that the testimony of Debtor was credible and competent.

Wednesday Rozsypal, an area manager with Ag Resource Management ("ARM") testified that ARM's lending entity, Agrifund, LLC, has agreed to loan funds to Debtor in accordance with his budget, based on the terms set forth in the instant motion.[1]

Rozsypal testified as to her extensive expertise in lending to agricultural entities.  She testified that, in her experience, lenders for which she has worked have analyzed farming operations on a historical tax return basis, and also reviewed farming budgets based on planting intentions and costs per acre within the industry.

Rozsypal testified that, in addition to performing an initial analysis, ARM analyzes additional scenarios based on variations of crop yields and prices.  She testified that ARM also reviews the loan when the farmer certifies the planting

---

[1]The court notes that a proposed loan document addressed at the hearing on the instant motion contained broader security than that addressed in the instant motion.  Rozsypal testified that the additional security is in error, and that the contract the parties contemplate contains the terms set forth in the instant motion.

plans to FSA, and when the farmer obtains a schedule of
insurance.  She testified that ARM loans funds based on a
discount to the projected crop yield.  She testified that ARM
typically makes operating loans secured by the crop, crop
insurance, and government payments.

Rozsypal testified that she investigated Debtor's
character.  She testified that he is an excellent farmer and a
reputable person.  She testified that she analyzed Debtor's
proposed planting plan.  She testified that she tweaked the
budget along the way in order to analyze an amount that ARM would
lend.  She testified that ARM used conservative estimates for
crop yields and prices in determining Debtor's ability to repay
the loan, and hence the amount available to lend.  The court
finds that the testimony of Rozsypal was credible, competent and
demonstrated considerable expertise in the area of agricultural
lending.

Mike Wischkaemper, an accountant who has prepared tax
returns for Debtor, and who has sought to be employed as Debtor's
accountant in the instant case, testified that he performed an
analysis of the loan Debtor seeks to obtain.  He testified that
he reviewed Debtor's tax returns over four years and Debtor's
Schedule F in the instant case, in order to determine whether
they are comparable to Debtor's budget for the 2016 growing
season.  He testified that Debtor's projections appear to be

6

within normal terms, based on Debtor's records of previous
yields.  He testified that he also compared Debtor's budget to
budgets of projected expenses available from the website of Texas
A&M University, for milo sorghum, cotton, corn, and wheat.  He
testified that milo sorghum, cotton, and corn projected a profit.
He testified that, although wheat was projected to make a small
loss, it is often planted in order to keep the soil in place.  He
testified that he believes Debtor will be able to repay the loan,
either through production or crop insurance.  The court finds
that the testimony of Wischkaemper was credible, competent and
demonstrated considerable expertise in the area of agricultural
accounting.

<u>Conclusions of Law</u>

Section 364(c)(2) of the Bankruptcy Code provides:

(c) If the trustee is unable to obtain unsecured credit
allowable under section 503(b)(1) of this title as an
administrative expense, the court, after notice and a
hearing, may authorize the obtaining of credit or the
incurring of debt—

* * *

(2) secured by a lien on property of the estate
that is not otherwise subject to a lien.

11 U.S.C. § 364(c)(2).

In determining whether to approve a motion to obtain
credit, courts generally permit debtors in possession to exercise
their basic business judgment consistent with their fiduciary
duties.  <u>See</u> <u>In re Ames Dept. Stores, Inc.</u>, 115 B.R. 34 (Bankr.

S.D.N.Y. 1990).

In the instant case, the uncontroverted testimony shows that Debtor has a need to borrow funds in order to plant crops for the 2016 growing season.  He has sought, but has been unable to obtain, unsecured credit.  Debtor's crop plan, and the proposed borrowing secured by a lien, appear to represent the reasonable exercise of Debtor's business judgment.  The court concludes that Debtor should be authorized to borrow funds on the terms set forth in the instant motion.

Based on the foregoing, a separate Judgment will be entered granting the "Debtor's Emergency Motion for Authority to Obtain Secured Credit Pursuant to the Provisions of 11 U.S.C. § 364(c)(2)" (Docket No. 42).

Signed at Houston, Texas on February 24, 2016.


LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

8